## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **HEATHER FIERCE,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. RWT 13-3549 |
| | * | |
| | * | |
| **SYLVIA M. BURWELL,** *Secretary,* | * | |
| *United States Department of Health and* | * | |
| *Human Services, et al.,* | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Federal antidiscrimination laws protect employees from discrimination based on certain protected characteristics, including disabilities. They do not protect employees from a bad relationship with a supervisor. Plaintiff Heather Fierce has presented evidence that she may have suffered from the latter, but because she has failed to produce sufficient evidence that she was discriminated against because of her disability, the Court must grant summary judgment to Defendants.

## BACKGROUND

### I.    Facts

The "Schedule A" program provides for the hiring by the federal government of qualified candidates with disabilities. ECF No. 34-1 at 2-3. Candidates hired under Schedule A are subject to a two-year probationary period, after which they may be hired as permanent employees. *Id.* Plaintiff Heather Fierce was hired by the Department of Health and Human Services ("DHHS") as a Schedule A candidate in September 2010. *Id.* She has clinical depression and unspecified learning disabilities. *Id.* at 2. Her immediate supervisor at NIH was

Tabitha Hairston ("Hairston"), and her second-line supervisor was Kim Derwinski ("Derwinski"). *Id.* at 3.

### A.  Hairston's Attitude Towards Plaintiff Changes

Apparently, Hairston and Plaintiff initially maintained a good working relationship, but this changed suddenly around July 2011, when "Plaintiff observed a change in how Ms. Hairston treated her…[s]pecifically, Ms. Hairston adopted an aggressive and accusatory posture towards Plaintiff…frequently ignored Plaintiff's communications, and provided her with less guidance and instruction on work assignments than she had before." *Id.*  Hairston also "began repeatedly accusing Plaintiff of failing to meet work deadlines." *Id.*  Plaintiff maintains in particular that the accusations regarding missed deadlines were unfair, as each missed deadline was either not, in fact, a missed deadline, or was missed due to circumstances outside of Plaintiff's control. *Id.* at 4.  This change in attitude "caused Plaintiff to experience unwarranted self doubt, stress, anxiety, and depression." *Id.*

Contrary to Plaintiff's assertion that Hairston's attitude towards her suddenly changed in July 2011, Defendants assert that Plaintiff had persistent performance issues almost immediately. ECF No. 14-1 at 4.  In support of this contention, Defendants have produced numerous contemporaneous documents that indicate Plaintiff's performance problems.  This evidence tends to demonstrate that Plaintiff had multiple issues: taking excessive leave, submitting travel vouchers late, using her government charge card for personal purchases, behaving in an unprofessional manner towards colleagues, and failing to appropriately prioritize work projects. ECF No. 14-6 (email from Hairston to Plaintiff concerning excessive use of sick leave); ECF No. 14-8 (emails concerning Plaintiff's failure to timely submit travel voucher); ECF No. 14-9 (emails concerning unauthorized charges on Plaintiff's government charge card);

ECF No. 14-10 (hostile emails from Plaintiff to coworkers); ECF No. 14-13 at 1-8 (emails by Hairston requesting updates on various work projects Plaintiff was responsible for).

### B.  Hairston Requires Plaintiff to Submit Weekly Accounting

In November 2011, Hairston requested that Plaintiff begin submitting weekly reports indicating what items she would be working on during the week and how much time would be devoted to each.  ECF No. 14-13 at 9.  Hairston required that three other employees submit similar reports.  ECF No. 24-1 at 20.  One of the other employees required to submit these reports claims to have had a disability, *id.* at 19, but there is no evidence that Hairston was aware of this employee's alleged disability, nor is there any evidence that any of the other employees required to submit this report had a disability.  ECF No. 14-154.

### C.  Memorandum of Counseling

In April 2012, Hairston delivered to Plaintiff a "Memorandum of Counseling" addressing the various issues with Plaintiff's performance.  ECF No. 14-18.  The Memorandum of Counseling detailed various instances in which Plaintiff had missed deadlines and performed unsatisfactory work.  *Id.*  Plaintiff denies the allegations in the Memorandum of Counseling. ECF No. 34-1 at 6.

### D.  Plaintiff Initiates EEO Counseling

In May 2012, Plaintiff filed an informal complaint with DHHS's Equal Employment Opportunity ("EEO") office.  ECF No. 34-1 at 6.  The informal complaint resulted in two failed mediations.  *Id.*  Hairston appears to have rejected three proposed terms that resulted from the mediation sessions: (1) that Plaintiff be made a permanent employee; (2) that Plaintiff be allowed to telework one day a week; and (3) that Plaintiff's work with HRSA's Council for Employees

with Disabilities be considered part of her work duties.[1]  ECF No. 14-25.  Following the failure

of mediation, Plaintiff filed a formal EEO complaint on August 4, 2012.  ECF No. 34-1 at 6.

### E.  Plaintiff is Terminated

On September 10, 2012, Plaintiff was informed that she would be terminated effective

September 22, 2012, at the end of her probation period.  ECF No. 14-20.  Further, Plaintiff was

placed on administrative leave effective immediately.  *Id.*  The termination notice exhaustively

detailed the litany of performance issues Plaintiff experienced during the probationary period.

*Id.*  Plaintiff denies the allegations in the termination notice.  ECF No. 34-1 at 6.

## II.   Procedural History

This case was originally filed in the United States District Court for the District of

Columbia.  ECF No. 1.  After two amendments to the Complaint, the case was transferred to this

Court.[2]  ECF No. 9.  Plaintiff alleges six counts in her Complaint.  Count I alleges retaliatory

termination in violation of Title VII.  *Id.* at 6-7.  Count II alleges various instances of

discriminatory treatment on the basis of Plaintiff's disability.  *Id.* at 7-9.  Count III alleges a

hostile work environment.  *Id.* at 9.  Count IV alleges intentional infliction of emotional distress.

*Id.* at 9-10.  Count V alleges negligent infliction of emotional distress.  *Id.* at 10-11.  Count VI

alleges a failure to accommodate under the ADA.[3]  *Id.* at 11.

---

[1] Hairston did agree to several other terms: (1) creation of a system of communication in relation to Plaintiff's deadlines; (2) communication of Plaintiff's unplanned absences via email or voicemail; (3) access to training two times per year; (4) copying Derwinski on Plaintiff's weekly updates; and (5) engaging in a conversation with Plaintiff regarding her disability.

[2] Plaintiff is requesting leave to amend the Complaint yet again, to add a claim for denial of a reasonable accommodation.  ECF No. 31; ECF No. 34-1.  Although the Court has serious doubts about whether this amendment is warranted, given that it is untimely and springs a new theory of liability on Defendants, the Court will grant leave to amend.  However, as explained in this Opinion, Defendant is entitled to judgment as a matter of law on this new claim as well.

[3] This Count was added to the Third Amended Complaint, after first being raised in Plaintiff's opposition to Defendants' motion.  ECF No. 24 at 5-6.

On March 11, 2014, Defendants filed the instant motion. ECF No. 14. The Court scheduled a hearing for August 28, 2014 to consider the motion. ECF No. 26. With a ripe dispositive motion pending, and a hearing for argument on that dispositive motion scheduled, Plaintiff's counsel, Reginald J. Richter, moved to withdraw his appearance, because he was "winding down his practice in the District of Columbia" and would be "sitting for the California Attorney's bar in February 2015." ECF No. 32. The Court reluctantly granted the motion. ECF No. 35. No other attorney has entered an appearance on Plaintiff's behalf.

### III.    Standard of Review

Defendants and Plaintiff have each filed numerous exhibits that the Court will consider in disposing of the instant motion. Accordingly, it is appropriate to treat Defendant's motion as a motion for summary judgment. Fed. R. Civ. P. 12(d).

#### A.  Summary Judgment Standard

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his]

pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24).  When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (emphasis added).  However, "if the evidence is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment." *Thompson Everett, Inc., v. Nat'l Cable Adv.*, 57 F.3d 1312, 1323 (4th Cir. 1995).

## ANALYSIS

### I.  Discrimination Claims[4]

Plaintiff asserts four claims on the basis that she was discriminated against because of her disability:[5] (1) that Defendants failed to accommodate her disability; (2) that she was subject to a hostile work environment by Hairston; (3) that she was subject to disparate treatment through various adverse employment actions; and (4) that she was retaliated against for engaging in protected activity.  The Court will address each of these claims in turn.

---

[4] Plaintiff states that these claims are brought under Title VII, but they are properly brought under the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*

[5] Plaintiff has alleged that she has depression and an unspecified learning disability.  Based on the allegations in Plaintiff's Complaint and the evidence she has offered, the Court will assume her depression constituted a disability under the Americans with Disabilities Act.  12 U.S.C. § 12102(1) (defining disability, in pertinent, part as a "mental impairment that substantially limits one or more major life activities"); ECF No. 24-1 at 2-3 (Plaintiff's affidavit asserting that clinical depression leads to "difficulty moving or waking up in the morning all the way to suicide").  Notably, Defendants did not challenge this point until submitting their reply brief.  ECF No. 29 at 9.  However, the Court will not consider Plaintiff's unspecified learning disability.  Through three amendments to her Complaint, Plaintiff has failed to disclose what this disability is or how it substantially affects any major life activity.

### A.  Failure to Accommodate Claim

A successful failure to accommodate claim requires Plaintiff to show that: (1) she is an individual with a disability; (2) her employer had notice of her disability; (3) with a reasonable accommodation she could perform the essential functions of her position; and (4) her employer refused to make the accommodation.  *Wilson v. Dollar General Corp.*, 717 F.3d 337, 344 (4th Cir. 2013).

Plaintiff asserts that Hairston was fully aware of her specific disability during the entirety of her employment.  ECF No. 34-1 at 3.  However, Hairston asserts that she only became aware of Plaintiff's specific disability on June 4, 2012, when preparing for the EEO mediation. ECF No. 14-4 at 4.  Indeed, despite her assertion, Plaintiff's own evidence shows that Hairston was not aware that her specific disability was depression.  In Plaintiff's EEO affidavit, in response to a question about whether her supervisors knew of her condition, Plaintiff stated that, because she was a Schedule A hire, Hairston knew she was disabled, and that since she was "not [in] a wheelchair or on a scooter, don't have a blind stick or hearing aid, thus the only other conclusion" was that she has a mental disability.  ECF No. 24-1 at 4.  However, there is no indication that Plaintiff discussed her depression with Hairston before June 4, 2012, and her own statement indicates that she did not.  Thus, Defendants cannot be liable for denying any request Plaintiff made before that date, because Defendants were not aware of Plaintiff's disability.

There is evidence that, in connection with the EEO mediation, and after Hairston became aware of her disability, Plaintiff requested to telework one day a week, and that Hairston denied this request.  ECF No. 14-25.  However, in her Complaint, Plaintiff does not specify how being allowed to telework was an accommodation she needed to do her job, but only says that she requested telework and asserts that it was a reasonable request.  ECF No. 34-1 at 11.  Plaintiff

7

goes further in her opposition, stating that she asked to telework "because Ms. Hairston became so hostile toward me." ECF No. 24-1 at 3. However, she still fails to specify how being allowed to telework one day a week was a reasonable accommodation for her depression.

The problem with Plaintiff's reasonable accommodation claim is that she fails to explain how her request was an accommodation that she needed to perform the essential functions of her job. Not every job-related request by a disabled employee that is denied by her employer will subject the employer to liability for failure to provide a reasonable accommodation. Rather, the denial of a request by a disabled employee could only subject the employer to liability if there is "a causal relationship between the disability and the request for accommodation," or, in other words, if "the requested accommodation was *necessary* in order for [her] to perform the essential functions of [her] job." *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997) (emphasis added).

*Davis v. Lockheed Martin Operations Support, Inc.*, 84 F. Supp. 2d 707 (D. Md. 2000) is instructive on this point. In *Davis*, the employee suffered from a condition which prevented her from sitting for extended periods of time, and which could be exacerbated by stressful situations. *Id.* at 709. With accommodations, however, Davis's doctor allowed her to return to work. *Id.* at 710. Davis's employer, to accommodate her disability, provided Davis with ergonomic furniture, a workstation that allowed her to stand and work as needed, and a cot to lie down on as needed. *Id.* at 712. While her doctor indicated she would be "well-suited to work at home," he never indicated that working from home was required to accommodate Davis's disability. *Id.* at 710-711. Davis, however, insisted that she be allowed to work from home. *Id.* Her employer refused to grant this request and, when Davis refused to return to the office full time, terminated her. *Id.* at 711. Davis argued that, by refusing to allow her to work from home, her

employer had refused to provide a reasonable accommodation.  *Id.*  The Court granted summary judgment, reasoning that Davis's employer, having provided the accommodations her doctor said were required, did not need to "grant Davis's unsupported requests" to work from home, and noted that employers "are not required to give employees with a disability *any* accommodation they request."  *Id.* at 713.

In *Davis*, there is no doubt that working from home would have been ideal in light of Davis's condition, if only because she would not have had to sit in a car while commuting to work.  At the same time, there was also no evidence that Davis *needed* to work from home.  Similarly, here, the Court can assume that teleworking may have helped alleviate some of Plaintiff's depression, if only because it would remove her from a stressful environment.[6]  However, Plaintiff provides no evidence that her disability *required* her to work from home.[7]  Indeed, on the facts of this case, it is obvious that Plaintiff did not need to telework, because after her request was denied on July 2, 2012, ECF No. 14-25, she continued to work until she was terminated on September 10, 2012, and there is no indication she would have needed to resign if she continued to telework.  Because Plaintiff's telework request was not necessary to allow her to perform her essential functions, she was not denied a reasonable accommodation.

### B.  Hostile Work Environment

To prove she suffered from a hostile work environment on the basis of her disability, Plaintiff must show that the alleged harassment: (1) was unwelcome; (2) was based on her disability; (3) was sufficiently severe or pervasive to alter the conditions of employment and

---

[6] The Court notes, however, that Plaintiff has not explicitly connected the dots between her telework request and her disability, stating only that she requested telework "because Ms. Hairston became so hostile toward me." ECF No. 24 at 6.

[7] Nor, for that matter, is there any evidence that Plaintiff actually communicated to Hairston or anyone else that her telework request was a reasonable accommodation for her depression.

create an abusive atmosphere; and (4) was imputable to her employer. *See Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir.2009).

Plaintiff's claim fails because there is no indication that the basis of any alleged harassment was her disability.  First, Plaintiff alleges that her working relationship with Hairston was initially positive before taking a turn for the worse sometime in July 2011.  ECF No. 34-1 at 3.  At the same time, Plaintiff states, and Hairston concurs, Hairston was aware that Plaintiff suffered from some disability at the time she was hired.[8]  ECF No. 14-4 at 4.  Hairston's awareness of Plaintiff's disability, but initial positive relationship with her, undermines any assertion that Hairston created a hostile environment for Plaintiff because of her disability.

Moreover, the evidence Plaintiff produces in her opposition directly counters any claim that she was subjected to a hostile work environment because of her disability.  Plaintiff presents the affidavits of three other employees who worked with or for Hairston: Angela Bethea-Spearman ("Bethea-Spearman"), Diane Culkin ("Culkin"), and Michelle Daniels ("Daniels").  To be sure, all three paint Hairston as a difficult supervisor and colleague. Importantly, however, each goes out of the way to show that Hairston was difficult to many employees, not just Plaintiff, and without regard to the existence of a disability.

For example, the picture Bethea-Spearman paints of Hairston is as a supervisor who displayed favoritism towards certain employees at the expense of others.  She states that "Ms. Hairston has her pick of employees, and if she thinks an employee is weak, she picks on them even more…Ms. Hairston openly praises her picks at these meetings."  ECF No. 24-1 at 19. Bethea-Spearman continues, asserting that Hairston "has no respect for others" and that she "has

---

[8] Although Hairston was not aware of Plaintiff's specific disability until June 4, 2012, the Court will assume for purposes of the hostile work environment claim that Hairston's general awareness that Plaintiff suffered from some disability suffices to show that she was "regarded as having a disability" under 42 U.S.C. § 12102(1)(C).  Otherwise this claim would fail out of hand because most of the incidents Plaintiff complains about occurred when Hairston was unaware of Plaintiff's specific disability.

a certain group that she clings to, it's that ivy-league bunch, and if you don't fit in that little peg, she attacks you." *Id.* at 20.

Similarly, Culkin alleges that Hairston "has her 'favorite' employees'" who were given special treatment. *Id.* at 35. Culkin also specifically alleges that Hairston harassed her and created a hostile work environment for her. *Id.* Importantly, Culkin is not disabled. *Id.* at 33. Indeed, Culkin hypothesizes that any issues with Hairston's management style have more to do with the fact she had "no prior supervisory experience" rather than some particular hostility towards employees with disabilities.[9] *Id.* at 35.

Daniels's assertions are comparable. First, Daniels directly undercuts Plaintiff's claim of disability discrimination by stating that Plaintiff told her that Hairston "did not believe that she [Plaintiff] had a disability." *Id.* at 41. Moreover, Daniels claims to have experienced similar treatment at the hands of Hairston, treatment "that could very well be considered bullying," and to have heard of others receiving similar treatment as well. *Id.* at 41-42. Daniels also does not suffer from a disability. *Id.* at 40-41.

Viewing the evidence in the light most favorable to Plaintiff, indeed relying solely on the very evidence provided *by* Plaintiff, Plaintiff has only demonstrated that Hairston was often a difficult supervisor, but that any unfair or hostile treatment was widely distributed without regard to the existence or absence of a disability. Thus, while Hairston may have been difficult, because there is no evidence she was discriminatory, Plaintiff's hostile environment claim fails.

### C.  Plaintiff Did Not Suffer from Disparate Treatment Due to Her Disability

Analysis of a claim of disparate treatment due to disability follows the burden-shifting analysis applied to Title VII claims. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50

---

[9] To be fair, Culkin also bemoans Hairston's "lack of ability to treat all people with dignity and respect regardless of race, religion, and ethnicity." ECF No. 24-1 at 36. However, this statement completely lacks factual detail, and is largely irrelevant since Plaintiff only claims discrimination based on her disability.

(analyzing disability discrimination claim using Title VII burden-shifting analysis).  In order to establish a *prima facie* case of disparate treatment, Plaintiff must demonstrate that: (1) she had a disability; (2) she was a qualified individual; and (3) she suffered an adverse action on account of her disability.  *See Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997).  If she establishes a *prima facie* case of discrimination, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for its actions, after which Plaintiff has the burden of proving pretext.  *Raytheon Co.*, 540 U.S. at 50n.3 (2003).

Plaintiff complains about the following adverse actions: (1) Hairston's interference with her receipt of an award; (2) the Memorandum of Counseling; and (3) Hairston's refusal to allow her to attend certain meetings and training sessions.  ECF No. 34-1 at 7-9.  Plaintiff's claim fails here, because as a legal matter none of these constitutes an action that adversely affected the terms and conditions of Plaintiff's employment.  *See Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 531 (D. Md. 2004) (denial of award not an adverse employment action); *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (counseling letter that does not implement discipline not an adverse employment action); *Wilcoxon v. DECO Recovery Mgmt., LLC*, 925 F. Supp. 2d 725, 731 (D. Md. 2013) (denial of permission to attend meetings not an adverse employment action); *Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575, 581 (D. Md. 2002) (denial of permission to "cross-train on company time" not an adverse employment action).

In addition, Plaintiff's disparate treatment claim also fails for the same reason her hostile environment claim fails, that she cannot demonstrate any adverse actions taken against her were on account of her disability.  As noted above, Plaintiff claims her relationship with Hairston was fine for months until a sudden change, even though Hairston was aware Plaintiff had a disability,

undermining any claim that adverse employment actions were taken because of Plaintiff's disability.

Finally, even if Plaintiff could state a *prima facie* case of disparate treatment, Defendants articulate legitimate, nondiscriminatory reasons for each challenged action, specifically extensive issues with Plaintiff's performance. *E.g.*, ECF No. 14-20 (detailing the problems with Plaintiff's performance). Plaintiff fails to produce any evidence from which a reasonable jury could conclude that these reasons were pretextual. Therefore, Plaintiff's discriminatory treatment claim fails.

### D.  Retaliation

Plaintiff claims she was retaliated against for engaging in protected activity. ECF No. 34-1 at 7. To establish a *prima facie* case of retaliation, Plaintiff must prove that: (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) there was a causal link between the two events. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005). If Plaintiff establishes a *prima facie* case, Defendants must articulate legitimate, non-retaliatory reasons for Plaintiff's termination, and once they do, the burden shifts back to Plaintiff to show pretext. *Id.* at 405.

Similar to the disparate treatment analysis, Defendant has articulated numerous legitimate, non-retaliatory reasons for terminating Plaintiff. ECF No. 14-20. Plaintiff merely asserts that the "stated rationales for her termination are pretextual and false," but she fails to elaborate. ECF No. 24 at 9. Given the litany of performance issues documented by Defendants, and the number of contemporaneous documents evidencing those problems, including correspondence from other employees with no connection to this lawsuit, no reasonable finder of fact could conclude that Plaintiff has established pretext. *See, e.g.* ECF No. 14-20 (detailing the

problems with Plaintiff's performance); ECF No. 14-9 (email from Michelle Lyons detailing unauthorized charges on government charge card).  Thus, Plaintiff's retaliation claim fails.

## II.        Tort Claims

Plaintiff attempts to make claims for intentional and negligent infliction of emotional distress.  The Federal Tort Claims Act requires a litigant to present any tort claim to an appropriate federal agency.  28 U.S.C. § 2675(a).  Thus, to the extent Plaintiff has any tort claims arising from her employment that are not preempted by the Rehabilitation Act or Title VII,[10] this Court is precluded from hearing them unless they have been presented to the agency.  Plaintiff appears to acknowledge she has not yet taken this step.  ECF No. 24 at 2 ("Plaintiff states her *intention* to submit her emotional distress claims in tort pursuant to FTCA, within the statutory time period.") (emphasis added).  Accordingly, these claims fail as well.

## III.       Rule 56(d) Request

Finally, the Court will address Plaintiff's assertion that summary judgment is premature and Defendants' motion should be denied or deferred under Federal Rule of Civil Procedure 56(d).  ECF No. 24 at 15-17.   As an initial matter, the Court notes that, although Plaintiff asserts in her opposition the need for discovery, she has failed to satisfy the basic procedural requirement of the rule.  Rule 56(d) requires that the "nonmovant show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."   Failure to file such an affidavit is sufficient grounds for the Court to reject

---

[10] *See Spence v. Straw*, 54 F.3d 196, 202 (3d Cir. 1995) ("[T]he Rehabilitation Act provides the exclusive means by which a litigant may raise claims of discrimination on the basis of handicap by federal agencies"); *Pueschel v. United States*, 369 F.3d 345, 353 (noting that Title VII is the exclusive remedy for discrimination and retaliation suffered during federal employment).

Plaintiff's claim that the opportunity for discovery has been inadequate.[11]   *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).

Even if the Court were inclined to forgive Plaintiff's failure to follow this simple, but important, procedural rule, Plaintiff fails to satisfy the substantive element of Rule 56(d), which requires a nonmoving party to give "specified reasons it cannot present facts essential to justify its opposition."  Instead, of specified reasons, Plaintiff insists that discovery "that is focused on amassing the factual details of the case will reveal, *e.g.*, if Defendant's allegedly discriminatory conduct was motivated by discriminatory animus."  ECF No. 24 at 16-17.  Moreover, at the end of each section detailing her claims, Plaintiff simply states that, although the preliminary Report of Investigation reveals material facts in dispute, "discovery is needed to adduce additional material facts in support of Plaintiff's allegations."  *Id.* at 20, 22, 24, 26.

These are not specified reasons.  Defendants have specified the facts, and provided extensive evidence in support of those facts, which they argue entitle them to summary judgment.  Specifically, as noted above in analyzing Plaintiff's claims, Defendants have provided extensive evidence, including extensive contemporaneous evidence, that the challenged actions were not the result of the unlawful discrimination Plaintiff claims, but were the result of Plaintiff's performance deficiencies.  Given Defendants' evidence in support of the motion, Plaintiff's Rule 56(d) request is nothing more than a request that she "be allowed to find out if [she] has a claim, rather than that [she] has a claim for which [she] needs" discovery.  *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).  The Court will not defer ruling on Defendants' motion to allow Plaintiff to engage in a fishing expedition.

---

[11] Even though Plaintiff is now *pro se*, she was represented at the time her opposition was filed.  Importantly, Defendant filed its reply brief, noting the failure of Plaintiff to file the required affidavit, on June 12, 2014. ECF No. 29.  Plaintiff's counsel did not move to withdraw until July 31, 2014, ECF No. 32, leaving nearly two months during which Plaintiff, through counsel, could have filed the required affidavit.  Thus, the Court is less inclined to grant the procedural leeway that might otherwise be given to a *pro se* plaintiff.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment.  A separate Order follows.


Dated: March 31, 2015                                         _____/s/_____

                                                              ROGER W. TITUS
                                                              UNITED STATES DISTRICT JUDGE